Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY FERREIRO,<br><br>          Plaintiff,<br><br>          vs.<br><br>TERMINIX GLOBAL HOLDINGS, INC., NAREN GURSHANEY, DEBORAH H. CAPLAN, DAVID J. FREAR, LAURIE ANN GOLDMAN, STEVEN B. HOCHHAUSER, BRETT PONTON, TERESA M. SEBASTIAN, STEPHEN J. SEDITA and CHRIS S. TERRILL,<br><br>          Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Breach of Fiduciary Duties<br>(2)  Aiding and Abetting Breach of Fiduciary Duties<br>(3)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(4)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Anthony Ferreiro ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.    Plaintiff brings this stockholder action against Terminix Global Holdings, Inc.("Terminix" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for breaches of fiduciary duties and for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act

of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Rentokil

Initial plc, through merger vehicles Leto Holdings I, Inc. ("Merger Sub 1") and Leto Holdings II,

LLC ("Merger Sub 2") (both collectively with Parent, "Rentokil") as a result of an unfair process,

and to enjoin an upcoming stockholder vote on a proposed stock and cash transaction (the

"Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 13, 2021,

filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive

Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Agreement,

Rentokil Initial will issue to Terminix shareholders at closing approximately 643.29 million new

Rentokil Initial shares and approximately $1.3 billion in cash. As a result, Terminix will become

an indirect wholly-owned subsidiary of Rentokil Initial plc.

3.      At the close of the transaction, Terminix shareholders will obtain the right of

election to receive either (1) a number of American depositary shares of Rentokil Initial (each

representing a beneficial interest in five ordinary shares of Rentokil Initial equal to (a) 1.0619

shares plus (B) the quotient of $11.00 ( "per share cash amount") and the volume weighted average

price (measured in U.S. dollars) of Rentokil Initial ADSs (measured using the volume weighted

average price of Rentokil Initial ordinary shares multiplied by the number of Rentokil Initial

ordinary shares represented by each Rentokil Initial ADS) for the trading day that is two trading

days prior to the closing date of the transaction (or such other date as may be mutually agreed to

by Rentokil Initial and Terminix) or (2) an amount in cash, without interest, and in U.S. dollars

equal to (A) the per share cash amount plus (B) the product of the exchange ratio and the Rentokil

Initial ADS price. The merger agreement does not make adequate provisions for the exhaustion of

each individual election option and instead imposes proration upon exhaustion of each form of consideration.

4.      The price of Terminix stock has dropped precipitously since the announcement of the Proposed Transaction, dropping over $5.00, highlighting the inadequacies in the process and organization of election rights.

5.      Thereafter, on June 7, 2022, Terminix filed a Registration Statement on Schedule F4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

6.      The Proposed Transaction is unfair for a number of other reasons.  Significantly, the Registration Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which no special committee of independent and disinterested directors was created to run the sales process.

7.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

8.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to the Proposed Transaction without first taking steps to ensure that Plaintiff in his capacity as a public Company stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Terminix Insiders without regard for Plaintiff in his capacity as a public Company stockholder.

Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff in his capacity as a public Company stockholder.

9.      In violation of the Exchange Act and in further breach of their fiduciary duties, on June 7, 2022, Defendants caused to be filed the materially deficient Registration Statement.  The Registration Statement is materially deficient and is thus in violation of the Exchange Act.  As detailed below, the Definitive Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Terminix, provided by Terminix management to the Board's financial advisor Lazard Frères & Co. LLC ("Lazard"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Lazard and provided to the Company and the Board.

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages suffered by Plaintiff resulting from the breaches of fiduciary duties and violations of the federal securities laws by Defendants.

## PARTIES

11.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a Terminix stockholder.

12.     Defendant Terminix provides residential and commercial termite and pest management services. Terminix is incorporated in Delaware and has its principal place of business

at 150 Peabody Place, Memphis, Tennessee 38103.  Shares of Terminix common stock are traded

on the New York Stock Exchange under the symbol "TMX".

13.     Defendant Naren Gursahaney ("Gursahaney") has been a director of the Company

at all relevant times.

14.     Defendant Deborah H. Caplan ("Caplan") has been a director of the Company at

all relevant times.

15.     Defendant David J. Frear ("Frear") has been a director of the Company at all

relevant times.

16.     Defendant Laurie Ann Goldman ("Goldman") has been a director of the

Company at all relevant times.

17.     Defendant Steven B. Hochhauser ("Hochhauser") has been a director of the

Company at all relevant times.

18.     Defendant Brett Ponton ("Ponton") has been a director of the Company at all

relevant times.  Ponton also serves as the company's Chief Executive Officer ("CEO").

19.     Defendant Teresa M. Sebastian ("Sebastian") has been a director of the Company

at all relevant times.

20.     Defendant Stephen J. Sedita ("Sedita") has been a director of the Company at all

relevant times.

21.     Defendant Chris S. Terrill ("Terrill") has been a director of the Company at all

relevant times.

22.     Defendants identified in ¶¶ 13 - 21 are collectively referred to as the "Individual

Defendants."

23.     Non-Party Rentokil Initial plc is a Pest Control company headquartered in Camberley, the United Kingdom. Shares of Rentokil Initial plc common stock are traded on the London Stock Exchange under the symbol "RTO.L."

24.     Non-Party Merger Subs are wholly owned subsidiaries of Rentokil Initial plc created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

28.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Terminix and owe the public stockholders of the Company, including Plaintiff, the duties of due care, loyalty, and good faith.

29.     By virtue of their positions as directors and/or officers of Terminix, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Terminix to engage in the practices complained of herein.

30.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company public stockholders including Plaintiff.  To diligently comply with these duties, directors of a corporation must:

   a.    act with the requisite diligence and due care that is reasonable under the circumstances;

   b.    act in the best interest of the Company and its public stockholders, including Plaintiff;

   c.    use reasonable means to obtain material information relating to a given action or decision;

   d.    refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

   e.    avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.    disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

31.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Terminix, are obligated to refrain from:

a.    participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders including Plaintiff; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders including Plaintiff.

32.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff as a public stockholder of Terminix, including their duties of loyalty, good faith, and due care.

33.    As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for his Terminix common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### Company Background

34.    Terminix Global Holdings, Inc. provides residential and commercial termite and pest management services. It offers termite and pest control services, including termite remediation, annual termite inspection, and prevention treatments with termite damage repair

guarantees, periodic pest control services, insulation services, crawlspace encapsulation, wildlife exclusion, and disinfection services. Terminix markets its services to homeowners and businesses through digital marketing, television and radio advertising, print advertisements, marketing partnerships, door-to-door Terminix sales programs, telemarketing, and various social media channels and through national, regional and local sales teams. The Company was formerly known as ServiceMaster Global Holdings, Inc. and changed its name to Terminix Global Holdings, Inc. in October 2020. Terminix Global Holdings, Inc. was founded in 1929 and is headquartered in Memphis, Tennessee.

35.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the November 2, 2021 press release announcing its 2022 Q3 financial results, the Company highlighted cash, Revenue growth of 4%, including 2% from acquisitions. Additionally, termite renewals growth grew to its highest since 2018, despite monthly subscription impacts. Finally, the Company reported a net income of $38 million with a margin of 7.2%.

36.    Speaking on the positive results, CEO Defendant Ponton reported "Solid performance in our termite business highlighted a quarter of continued progress on the Terminix Way and the CxP operating platform initiatives." He continued by discussing the "Strong growth in termite renewals, price realization and contribution from eight tuck-in acquisitions in the quarter led to solid revenue growth." He concluded with optimism by stating "On the bottom line, higher revenue contribution and direct cost productivity were partially offset by increased medical expenses and staffing challenges as we manage through pandemic related pressures on the business. Even with continued inflationary pressure on building materials, we also made progress

managing termite damage claims, with fewer claims in the quarter leading to the first year-over-year reduction in cost since 2019."

37.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Terminix.  Clearly, based upon the positive outlook, the Company is likely to have future success.

38.     Despite this upward trajectory, the Individual Defendants have caused Terminix to enter into the Proposed Transaction without providing requisite information to Terminix stockholders such as Plaintiff.

***The Flawed Sales Process***

39.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

40.     Notably, Company management failed to structure the deal in a manner in which shareholders could obtain their desired form of merger consideration by agreeing to an election provision which does not adequately provide for a situation in which one of the election options becomes exhausted.

41.     The Registration Statement is silent as to whether a committee of the Board composed of disinterested and independent members was created to run the sales process, and if so, their specific powers.

42.     Furthermore, the Proposed Transaction fails to contain a collar mechanism to ensure the merger consideration remains in a realm of reasonableness in the event of a dramatic change in Rentokil's stock price prior to the consummation of the Proposed Transaction.

43.     The Registration Statement is also silent as to the nature of any existing confidentiality agreement entered into between the Company and Rentokil and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

44.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

45.     On December 13, 2021, Terminix and Rentokil Initial plc issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**LONDON & MEMPHIS, Tenn.--(BUSINESS WIRE)--** Terminix Global Holdings, Inc.(NYSE: TMX) and Rentokil Initial plc:

***Transaction summary***

The Boards of Directors of Rentokil Initial plc ("Rentokil Initial") and Terminix Global Holdings, Inc. ("Terminix") are pleased to announce that Rentokil Initial and Terminix have entered into a definitive agreement (the "Agreement") under which Rentokil Initial will acquire Terminix for stock and cash (the "Combination" or the "Transaction"). The Transaction will bring together two complementary businesses (the "Combined Group") to create the global leader in pest control and hygiene & wellbeing, and the leader in the pest control business in North America, the world's largest pest control market.

Under the terms of the Agreement, Rentokil Initial will issue to Terminix shareholders at closing aggregate consideration comprised of approximately 643.29 million new Rentokil Initial shares (representing approximately 128.66 million American depository shares ("ADSs"), based on a 1:5 ADS to Rentokil Initial share ratio) and approximately US$1.3bn in cash. Based on Rentokil Initial's 5-day average daily volume weighted share price and the 5-day average of the Sterling-US Dollar exchange rate both over the period spanning 6 to 10 December 2021 inclusive, this values the entire share capital of Terminix at US$6.7billion, implying

a value of US$55.00 per share of Terminix common stock, and represents an aggregate consideration mix of 80% stock and 20% cash and:

- A premium of 47.0% over the closing price of Terminix common stock on 13 December 2021 (being the last trading day prior to this announcement); *and*
- A premium of 32.5% over the 90-day volume weighted average share price of Terminix ending on 13 December 2021.

Terminix shareholders may elect to receive all cash or all stock consideration, subject to proration in the event of oversubscription. Each Terminix share for which no election or an invalid election is received will be deemed to have elected for all stock consideration.

The value of the per share cash election and the value of the per share stock election will be equalised ahead of closing such that the value of each election choice will be substantially the same.

The total number of new Rentokil Initial ADSs to be issued and the aggregate amount of cash to be paid under the terms of the Agreement will not vary as a result of individual election preferences.

As part of the Combination, Rentokil Initial will list the American Depository Receipts ("ADRs") evidencing the ADSs on the New York Stock Exchange ("NYSE"). The Combination will result in Terminix's existing shareholders owning approximately 26% of the Combined Group on completion and sharing the benefits accruing to the Combined Group.

The Transaction will combine two leading brands with a long cultural heritage, outstanding talent and strong focus on people, customers and ESG. Upon completion, the Combined Group will have c.56,000 colleagues serving c.4.9m customers around the world from 790 locations. The enlarged business will have a strong platform for growth, particularly in North America, and an attractive financial profile to support future growth, including through acquisitions and continued investment in innovation and technology. For the year ended 31 December 2020, the Combined Group's pro forma revenue would have amounted to US$5.7bn1 (£4.3bn), with EBITDA of US$1.2bn (£897m) and Free Cash Flow of US$608m (£458m).

The Combination is expected to create significant value, enhance long-term growth potential, be highly cash generative and present a compelling industrial logic, supported by:

- Increased scale and leadership in the global pest control market;
- Substantially increased scale in North America, providing an enlarged platform for profitable growth;

- A complementary and synergistic portfolio combination; and
- An attractive financial profile.

The Combination is expected to generate material annual pre-tax net cost synergies of at least US$150m (£113m) by the third full year post completion. Run rate synergies are expected to accumulate c.30%, c.80% and 100% in the first, second and third 12-month periods respectively, post completion. In achieving these synergies, the Combined Group expects to incur aggregate cash implementation costs of approximately US$150m, half of which will be incurred in the first 12 months post completion. The Transaction is expected to deliver mid-teens percent accretion to Rentokil Initial's earnings per share in the first full year post completion2.

### Recommendations

The Boards of Directors of both Terminix and Rentokil Initial have unanimously approved the Transaction and resolved to recommend that their respective shareholders vote in favour of it.

### Current trading

Rentokil Initial and Terminix each confirm that current trading is in line with expectations.

Commenting on today's announcement, Richard Solomons, Chairman of Rentokil Initial, said:

"The Board of Rentokil Initial and I are delighted to recommend this transformational combination which will create the global leader in Pest Control and Hygiene & Wellbeing. Under Andy Ransom's leadership, our Combined Group will have a highly talented and experienced management team able to more effectively create value and enhance long-term growth. We believe the combination is a compelling opportunity for all stakeholders to participate in the value creation of the Combined Group."

Commenting on today's announcement, Andy Ransom, CEO of Rentokil Initial, said:

"This is an exciting and transformational combination that will create the global leader in commercial, residential and termite pest control, and a leader in North America, the world's largest pest control market. It brings together c.56,000 colleagues, protecting people, enhancing lives in over 87 countries, and serving c.4.9m customers.

"These are two highly complementary businesses with a similar operational playbook focused on supporting great people to provide outstanding customer

service across Pest Control and Hygiene & Wellbeing. The combination will deliver further investment and the sharing of best practices to enable our talented teams to better serve customers, protecting them from the growing threat of pests and meeting their future needs. We will open our first innovation centre in the US and provide our industry-leading innovations and digital technologies to a far larger customer base. This is a win-win-win for colleagues, customers and shareholders."

Commenting on today's announcement, Naren Gursahaney, Chairman of Terminix, said:

"On behalf of the Board of Terminix, I enthusiastically support this complementary combination of two phenomenal pest management companies. Our Board of Directors is confident that Rentokil Initial is the perfect partner for Terminix and that this Transaction will maximize value for Terminix's customers, teammates and stockholders. The Transaction delivers a compelling 47.0% premium for Terminix's stockholders, and the equity consideration will allow Terminix stockholders to participate in and benefit from the substantial upside potential of the combined company. The Terminix Board of Directors has unanimously determined that this highly complementary combination is a win for, and in the best interests of, all of our stakeholders. The combined company will be differentiated by its strong focus on people, customers and ESG and well-positioned to drive continued growth and value creation."

Commenting on today's announcement, Brett Ponton, CEO of Terminix, said:

"This is an exciting next step that significantly advances Terminix's journey toward becoming a global leader in pest management. As part of a larger and stronger organisation, we will offer superior service and an even more comprehensive range of solutions for our customers, while accelerating our investments in growth and technology. I look forward to the opportunity this combination provides for our colleagues and customers. The shared cultural focus on providing our people with the training, tools, and technology necessary to provide world-class customer service will provide new opportunities for our teammates to develop as part of the worldwide leader in pest control. Leveraging our strong combined residential and commercial capabilities and enhanced customer density will bring us closer to our customers and improve the quality of service we provide to our customers."

### The Inadequate Merger Consideration

46.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

47.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately

reflect the intrinsic value of the Company. For example, the Company has traded as high as $53.33 per share within the past 52 weeks, a value that is, taken together with the significant drop of Rentokil stock price since the Merger announcement, significantly greater than the actual consideration which will be received by common stockholders in the Proposed Transaction.

48.     Moreover, post-closure, Plaintiff will be frozen out of his ownership interest in the Company and will not be able to reap the rewards of the Company's future prospects.

49.     It is clear from these facts set forth herein that this deal is designed to maximize benefits for Rentokil at the expense of Plaintiff and Terminix stockholders.

***Preclusive Deal Mechanisms***

50.     The Merger Agreement contains certain provisions that unduly benefit Rentokil by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that constrains Terminix's ability to enter into alternative strategic transactions.   Notably, in the event of termination, the merger agreement requires Terminix to pay up to approximately $95 million to Rentokil, if the Merger Agreement is terminated under certain circumstances. The termination fee will make the Company that much more expensive to acquire for potential purchasers.   The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

51.     The Merger Agreement also contains a "No Solicitation" provision that, after a brief period of time post-entry into the Merger Agreement, restricts Terminix from considering alternative acquisition proposals by, *inter alia*, constraining Terminix's ability to solicit or communicate with potential acquirers or consider their proposals.   Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any

alternative proposal, but permits the Board to consider an unsolicited bona fide acquisition proposal if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

52.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.   Here, the Individual Defendants agreed to provide Rentokil information in order to match any other offer, thus providing Rentokil access to the unsolicited bidder's financial information and giving Rentokil the ability to top the superior offer.   Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Rentokil.

53.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests Plaintiff in his capacity as a public Company stockholder.

54.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

55.     The breakdown of the benefits of the deal indicate that Terminix insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Terminix.

56.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.   Notably,

the Registration Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| Name of Beneficial Owner | Shares of Terminix Common Stock Beneficially Owned | Percent of Outstanding Shares of Terminix Stock |
|---|---|---|
| T. Rowe Price Associates, Inc.(1) | 13,390,372 | 11.0 |
| Janus Henderson Group plc(2) | 12,397,702 | 10.2 |
| Morgan Stanley(3) | 11,096,973 | 9.1 |
| The Vanguard Group(4) | 10,828,509 | 8.9 |
| Naren K. Gursahaney(5)(6) | 148,401 | * |
| Deborah H. Caplan(5)(6) | 14,255 | * |
| David J. Frear(5)(6) | 6,612 | * |
| Laurie Ann Goldman(5)(6) | 19,666 | * |
| Steven B. Hochhauser(5)(6) | 17,646 | * |
| Teresa M. Sebastian | 5,526 | * |
| Stephen J. Sedita(5)(6) | 30,176 | * |
| Chris S. Terrill | 5,526 | * |
| Brett T. Ponton(5)(6) | 34,371 | * |
| Robert J. Riesbeck | 16,290 | * |
| David M. Dart | 31,177 | * |
| Deidre Richardson | — | |
| Anthony D. DiLucente | — | |
| Dion Persson(5)(7) | 81,976 | * |
| Kim Scott | — | |
| All current directors and executive officers as a group (12 persons)(7) | 329,646 | * |

57.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Registration Statement does not provide the specific amount of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction.

58.     Moreover, certain employment agreements with certain Terminix executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| | Cash ($)(1) | Equity ($)(2) | Benefits ($)(3) | Tax Reimbursement ($) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|---|
| Brett T. Ponton | 3,900,000 | 8,199,540 | 7,660 | — | 2,906,250 | 15,013,450 |
| Robert J. Riesbeck | 2,405,000 | 2,916,337 | 13,447 | — | 580,208 | 5,914,992 |
| David Dart | 1,296,000 | 1,876,413 | 19,622 | — | 451,250 | 3,643,285 |
| Deidre Richardson | 1,312,000 | 857,120 | 6,546 | — | 452,500 | 2,628,166 |
| Dion Persson | 1,440,000 | 3,111,271 | 13,886 | — | 462,500 | 5,027,657 |

59.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

60.     Thus, while the Proposed Transaction is not in the best interests of Terminix, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

61.     On June 7, 2022, the Terminix Board and Rentokil caused to be filed with the SEC the materially misleading and incomplete Registration Statement that, in violation of the Individual Defendant's fiduciary duties and the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

62.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.     Specific information as to why the inclusion of a collar mechanism in the Proposed Transaction was not required by the Board;

b.     Adequate disclosure as to why the Company was unable to structure an election provision which accounts for all scenarios by which shareholders may elect for their preferred form of merger consideration;

c.     Specific information regarding whether a committee of the Board was created

to run the sales process composed of independent and disinterested Directors, and if so, the specific powers of that committee;

d.   Whether the confidentiality agreements entered into by the Company with Rentokil differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Rentokil, would fall away; and

f.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Terminix and Rentokil's Financial Projections*

63.   The Registration Statement fails to provide material information concerning financial projections for Terminix and Rentokil provided by Terminix and Rentokil management to the Board, Lazard, and relied upon by Lazard in its analyses.  The Registration Statement discloses management-prepared financial projections for the Company and Rentokil which are materially misleading.

64.   The Registration Statement should have, but fails to provide, certain information in the projections that Terminix and Rentokil management provided to the Board and Lazard.  Courts

have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

65.    With regard to the *Certain Terminix Unaudited Prospective Financial Information* prepared by Terminix Management, the Registration Statement fails to disclose material line items for the following metrics:

a.    With respect to the projections summarized in September 2021:

i.    Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income, depreciation and amortization expense, acquisition-related costs, the value of Mobile Bay Formosan termite settlement, fumigation related matters, non-cash stock-based compensation expense, restructuring and other charges, goodwill impairment, amortization of cloud based software, net earnings from discontinued operations, provision for income taxes, loss on extinguishment of debt, and interest expense; and

ii.    Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: increase in net working capital, interest, taxes, restructuring payments, acquisition-related costs, and other operating cash flow items.

b.    With respect to the projections summarized in October 2021:

i.    Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income,

depreciation and amortization expense, acquisition-related costs, the value of Mobile Bay Formosan termite settlement, fumigation related matters, non-cash stock-based compensation expense, restructuring and other charges, goodwill impairment, amortization of cloud based software, net earnings from discontinued operations, provision for income taxes, loss on extinguishment of debt, and interest expense; and

ii.   Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: increase in net working capital, interest, taxes, restructuring payments, acquisition-related costs, and other operating cash flow items.

c.   With respect to the projections summarized in December 2021:

i.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income, depreciation and amortization expense, acquisition-related costs, the value of Mobile Bay Formosan termite settlement, fumigation related matters, non-cash stock-based compensation expense, restructuring and other charges, goodwill impairment, amortization of cloud based software, net earnings from discontinued operations, provision for income taxes, loss on extinguishment of debt, and interest expense; and

ii.   Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: increase in net working capital, interest, taxes, restructuring payments, acquisition-related costs, and other operating cash flow items.

d.    With respect to the projections prepared for years 2021E-2025E:

    i.    Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income, depreciation and amortization expense, acquisition-related costs, the value of Mobile Bay Formosan termite settlement, fumigation related matters, non-cash stock-based compensation expense, restructuring and other charges, goodwill impairment, amortization of cloud based software, net earnings from discontinued operations, provision for income taxes, loss on extinguishment of debt, and interest expense; and

    ii.    Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: increase in net working capital, interest, taxes, restructuring payments, acquisition-related costs, and other operating cash flow items.

66.    With regard to the *Summary of the Terminix management unaudited Rentokil Initial projections* provided by Terminix Management, the Registration Statement fails to disclose material line items for the following metrics:

a.    Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: operating profit, one-off operating items, depreciation, and other items; and

b.    Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net cash flow from operating activities, capital expenditures, net additions, and disposals of right-of-use assets.

67.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP

to GAAP metrics utilized in the projections.

68.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

69.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the adequacy of merger consideration, Rentokil's true worth, the accuracy of Lazard's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

70.     In the Registration Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

71.     With respect to the *Comparable Public Companies Analysis* for Terminix, the Registration Statement fails to disclose:

        a.     The Enterprise Values for the Companies utilized, as well as all underlying inputs and assumptions used to calculate this metric, including specifically: equity market value, debt, lease liabilities, preferred stock and minority interests, and cash and cash equivalents.

     b.    The underlying inputs and assumptions used to calculate EV / 2022 EBITDA multiples of the selected companies of 12.0x to 16.0x,

72.    With respect to the *Precedent Transactions Analysis* section, the Registration Statement fails to disclose:

     a.    The value of each selected transaction compared;

     b.    The exact date on which each selected transaction closed;

     c.    The specific metrics for each selected Transaction;

     d.    The inputs and assumptions used to determine a range of EV / LTM EBITDA multiples of 18.0x to 20.0x;

73.    With respect to the *Discounted Cash Flow Analysis* section, the Registration Statement fails to disclose:

     a.    The input used for the Company's stand-alone unlevered, after-tax free cash flows;

     b.    The implied terminal values calculated for the Company;

     c.    The inputs, metrics, and assumptions used to determine perpetuity growth rates of 2.0% to 2.5%;

     d.    The inputs, metrics, and assumptions used to determine a range of discount rates of 7.8% to 8.8%; and

     e.    The weighted average cost of capital for the Company.

74.    With respect to the *Comparable Public Companies Analysis* for Rentokil, the Registration Statement fails to disclose:

     a.    The underlying inputs and assumptions used to calculate EV / 2022 EBITDA multiples of the selected companies of 15.0x to 19.0x,

   b. The multiples, inputs, metrics and assumptions for each company compared.

  75. With respect to the *Discounted Cash Flow Analysis* for Rentokil, the Registration Statement fails to disclose:

   a. The input used for the Rentokil's stand-alone unlevered, after-tax free cash flows;

   b. The implied terminal values calculated for Rentokil;

   c. The inputs, metrics, and assumptions used to determine perpetuity growth rates of 2.0% to 2.5%; and

   d. The inputs, metrics, and assumptions used to determine a range of discount rates of 5.3% to 6.3%.

  76. With respect to the *Present Value of Future Share Price* section, the Registration Statement fails to disclose:

   a. The underlying inputs, metrics, and assumptions necessary to calculate NTM/EBITDA multiples of 12.7x to 14.7x;

   b. The underlying inputs, metrics, and assumptions necessary to determine a discount rate of 9.4%;

   c. The Company's cost of equity;

  77. With respect to the *Analyst Target Prices* section, the Registration Statement fails to disclose:

   a. The specific Wall Street equity analysts' consensus estimates; and

   b. The identity of the firms and individual analysts who produced such estimates; and

   c. The inputs, metrics, and assumptions used to determine an illustrative cost of

equity of 9.4%.

78.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

79.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Terminix stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Breach of Fiduciary Duties

#### (Against the Individual Defendants)

80.     Plaintiff repeats all previous allegations as if set forth in full herein.

81.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

82.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in Terminix.

83.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in his capacity as a Company public stockholder by entering into the Proposed Transaction through

a flawed and unfair process and failing to take steps to maximize the value of the Company to Plaintiff in his capacity as a Company public stockholder.

84.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in his capacity as a Company public stockholder all material information necessary for it to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

85.     The Individual Defendants dominate and control the business and corporate affairs of Terminix, and are in possession of private corporate information concerning Terminix's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in his capacity as a Company public stockholder which makes it inherently unfair for them to benefit their own interests to the exclusion of Plaintiff.

86.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff in his capacity as a Company public stockholder.

87.     As a result of the actions of the Individual Defendants, Plaintiff in his capacity as a Company public stockholder will suffer irreparable injury in that he has not and will not receive its fair portion of the value of Terminix's assets and has been and will be prevented from obtaining a fair price for his holdings of Terminix common stock.

88.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff in his capacity as a Company public stockholder, all to the irreparable harm of the Plaintiff.

89.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

### SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendant Terminix)

90.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

91.     Defendants Terminix, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

92.     As a result this conduct, Plaintiff in his capacity as a Company public stockholder will suffer irreparable injury in that he has not and will not receive his fair portion of the value of Terminix's assets and has been and will be prevented from obtaining a fair price for its holdings of Terminix common stock.

93.     Plaintiff has no adequate remedy at law.

### THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

94.     Plaintiff repeats all previous allegations as if set forth in full herein.

95.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

96.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

97.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

98.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

99.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

100.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

101.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

102.    Plaintiff repeats all previous allegations as if set forth in full herein.

103.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

104.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

105.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Terminix's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

106.    The Individual Defendants acted as controlling persons of Terminix within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Terminix to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Terminix and all of its employees. As alleged above, Terminix is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D. Directing the Individual Defendants to comply with the Exchange Act and their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E. Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 14, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*